UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRADLEY HOTEL CORP., doing business as
Quality Inn & Suites Bradley, and all others
similarly situated,

    Plaintiff,

v.

ASPEN SPECIALTY INSURANCE COMPANY,

    Defendant.

Case No. 1:20-cv-04249

*JURY TRIAL DEMANDED*

## CLASS-ACTION COMPLAINT

Plaintiff, BRADLEY HOTEL CORP., doing business as "Quality Inn & Suites Bradley" ("Plaintiff"), by and through its attorneys, complaining of the Defendant, ASPEN SPECIALTY INSURANCE COMPANY (hereinafter "Aspen Specialty"), for its Complaint, pleading in the alternative, on behalf of itself and all others similarly situated, states as follows:

### Nature of the Action

1. This action arises out of Aspen Specialty's failure to provide insurance coverage for losses incurred by Plaintiff and those similarly situated because of the ongoing Coronavirus (COVID-19) pandemic.

2. This action seeks a declaratory judgment that affirms that the COVID-19 pandemic and the corresponding response by civil authorities triggers coverage, has caused physical property loss and damage to the insured property, provides coverage for future civil authority orders that result in future suspensions or curtailments of business operations, and finds that Aspen Specialty is liable for the losses suffered by policyholders.

3. This action also includes a claim against Aspen Specialty for breach of its contractual obligation under its all-risk insurance policy to indemnify Plaintiff and others similarly situated who have suffered losses due to the measures put in place by civil authorities' stay-at-

home or shelter-in-place orders.

4. Plaintiff brings this action for breach of contract and declaratory relief on behalf of itself and a proposed class of policyholders who paid premiums to Aspen Specialty in exchange for all-risk commercial property insurance coverage that included lost business income and extra expense coverage.

## The Parties

5. Plaintiff, Bradley Hotel Corp., is an Illinois corporation with its principal place of business at 800 North Kinzie Avenue, Bradley, Illinois 60915. At all times mentioned herein, Plaintiff operated the Quality Inn & Suites, a hotel located at 800 North Kinzie Avenue, Bradley, Illinois 60915.

6. The Quality Inn & Suites in Bradley, Illinois includes approximately 84 guest rooms, a lounge/bar, restaurant, and a 12,000 square foot meeting room that can accommodate up to 1,000 occupants.

7. Defendant, Aspen Specialty, is a surplus lines insurance carrier organized under the laws of the State of North Dakota, with its principal place of business in Rocky Hill, Connecticut.

8. At all times mentioned herein, Aspen Specialty sold specialty insurance products to a variety of commercial businesses, including hotels and motels, throughout Illinois and the United States.

## Jurisdiction and Venue

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than Defendant; there are more than 100 members of the Class; and upon information and belief the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

10. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1)

because there is complete diversity among the parties, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

11. This Court has personal jurisdiction over Aspen Specialty pursuant to Illinois's long-arm statute, 735 ILCS 5/2-209, because this complaint concerns: (1) one or more contracts Aspen Specialty made to insure property and/or risk in Illinois, (2) business that Aspen Specialty transacted within Illinois, and (3) one or more contracts and/or promises Aspen Specialty made that are substantially connected with Illinois. 735 ILCS 5/2-209(a)(1), (4), (7).

12. Additionally, because this action presents an actual controversy within this Court's jurisdiction, this Court may declare the legal rights and obligations of the parties hereto under 28 U.S.C. § 2201.

13. Venue is appropriate because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in the Northern District of Illinois and Aspen Specialty "resides" in the Northern District of Illinois. 28 U.S.C. § 1391.

## Factual Allegations

*Coronavirus (COVID-19) and Illinois's Response*

14. For years, if not decades, the Center for Disease Control ("CDC") and the World Health Organization ("WHO") have been warning about the possibility of an airborne virus that could cause a worldwide pandemic.

15. Coronavirus (COVID-19) (hereinafter "COVID-19") is a highly contagious airborne virus that has rapidly spread and continues to spread across the United States.

16. On March 11, 2020, WHO Director General Tedros Adhanom Ghebreyesus declared the COVID-19 outbreak a worldwide pandemic: "WHO has been assessing this outbreak around the clock and we are deeply concerned both by the alarming levels of spread and severity, and by the alarming levels of inaction. We have therefore made the assessment that COVID-19

can be characterized as a pandemic."[1]

17. On March 13, 2020, President Trump declared the COVID-19 pandemic to be a national emergency.[2]

18. On March 16, 2020, the CDC and members of the national Coronavirus Task Force issued to the American public guidance, styled as "30 Days to Slow the Spread" for stopping the spread of COVID-19. This guidance advised individuals to adopt far-reaching social distancing measures, such as working from home, avoiding shopping trips and gatherings of more than ten people, and staying away from bars, restaurants and food courts.[3]

19. Following this advice for individuals to adopt far-reaching social distancing measures, and in response to the COVID-19 pandemic, many state government administrations across the nation recognized the need to take steps to protect the health and safety of their residents from the human-to-human and surface-to-human spread of COVID-19. Accordingly, many governmental entities entered civil authority orders suspending or severely curtailing business operations of businesses that interact with the public and provide gathering places for individuals. Currently, almost all states within the United States have issued some sort of "stay-at-home" order and ordered private, non-essential business operations to close (the "Closure Orders").

20. For instance, on March 16, 2020, in direct response to the COVID-19 outbreak, Illinois Governor J.B. Pritzker issued Executive Order 2020-07, which provides in relevant part as follows:

---

[1] See World Health Organization, *WHO Director-General's opening remarks at the media briefing on COVID-19 - 11 March 2020* (Mar. 11, 2020), https://www.who.int/dg/speeches/detail/who-directorgeneral-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

[2] See The White House, *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak* (Mar. 13. 2020), https://www.whitehouse.gov/presidentialactions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

[3] See *The President's Coronavirus Guidelines for America, 30 Days to Slow the Spread*, WHITE HOUSE, http://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirusguidance_8.5x11_315PM.pdf (last visited July 20, 2020).

- Beginning March 16, 2020 at 9 p.m. through March 30, 2020, all businesses in the State of Illinois that offer food or beverages for on-premises consumption—including restaurants, bars, grocery stores, and food halls—must suspend service for and may not permit on-premises consumption…Hotel restaurants may continue to provide room service and carry-out. (See Section 1 of Executive Order 2020-07).

- Beginning March 18, 2020, all public and private gatherings in the State of Illinois of 50 people or more are prohibited for the duration of the Gubernatorial Disaster Proclamation. A public or private gathering includes community, civic, public leisure, faith-based events, sporting events with spectators, concerts, conventions, and any similar event or activity that brings together 50 or more people in a single room or a single space at the same time. This includes venues such as fitness centers/health clubs, bowling alleys, private clubs, and theatres. (See Section 2 of Executive Order 2020-07).

21. On March 20, 2020, Governor Pritzker issued Executive Order 2020-10, which provided in relevant part as follows:

- **Stay at home or place of residence**. All individuals currently living within the State of Illinois are ordered to stay at home or at their place of residence except as allowed in this Executive Order…All persons may leave their homes or place of residence only for Essential Activities[4], Essential Governmental Functions, or to operate Essential Businesses and Operations, all as defined below. (See Section 1 of Executive Order 2020-10, ¶1).

- **Non-essential business and operations must cease**. All businesses and operations in the State, except Essential Businesses and Operations as defined below, are required to cease all activities within the State except Minimum Basic Operations, as defined below. (See Section 1 of Executive Order 2020-10, ¶2).

- **Prohibited activities**. All public and private gatherings of any number of people occurring outside a single household or living unit are prohibited, except for the limited purposes permitted by this Executive Order. Pursuant to current guidance from the CDC, any gathering of more than ten people is prohibited unless exempted by this Executive Order. Nothing in this Executive Order prohibits the gathering of members of a household or residence. All places of public amusement, whether indoors or outdoors, including but not limited to, locations with amusement rides, carnivals, amusement parks, water parks, aquariums, zoos, museums, arcades, fairs, children's play centers, playgrounds, funplexes, theme

---

[4] "Essential Activities" were defined by Executive Order 2020-10 as those involving "health and safety," "for necessary supplies and services," "for outdoor activity," "for certain types of work" related to essential products and services, and "to take care of others." (See Section 1 of Executive Order 2020-10, ¶5).

- parks, bowling alleys, movie and other theaters, concert and music halls, and country clubs or social clubs shall be closed to the public. (See Section 1 of Executive Order 2020-10, ¶3).

- **Prohibited and permitted travel**. All travel, including, but not limited to, travel by automobile, motorcycle, scooter, bicycle, train, plane, or public transit, except Essential Travel and Essential Activities as defined herein, is prohibited. People riding on public transit must comply with Social Distancing Requirements to the greatest extent feasible. This Executive Order allows travel into or out of the State to maintain Essential Businesses and Operations and Minimum Basic Operations. (See Section 1 of Executive Order 2020-10, ¶4).

- **Essential Businesses and Operations**. For the purposes of this Executive Order, Essential Businesses and Operations means Healthcare and Public Health Operations, Human Services Operations, Essential Governmental Functions, and Essential Infrastructure, and the following: (v) hotels and motels, to the extent used for lodging and delivery or carry-out food services. (See Section 1 of Executive Order 2020-10, ¶12(v)).

22. Executive Orders 2020-07 and 2020-10 are not laws or ordinances.

23. Since March 16, 2020, countless businesses have made claims under their property and casualty insurance policies for the business income they lost as a result of COVID-19 and the resulting Closure Orders.

24. Insurers, including Aspen Specialty, have denied nearly every claim for lost business income - claiming insureds have not suffered a "Direct Physical Loss" to their property, a prerequisite for coverage.

*The Aspen Specialty All-Risk Insurance Policy*

25. In 2019, Aspen Specialty sold Plaintiff an "all-risk" insurance policy (Aspen Specialty Policy Number WKA US02699-00) with an effective date of coverage of May 1, 2019. A copy of Aspen Specialty Policy Number WKA US02699-00 (hereinafter the "Policy" or "Policy Number WKA US02699-00") is attached as Exhibit "A."

26. "All-risk" insurance policies cover loss or damage to the covered premises resulting from all risks other than those expressly excluded.

27. The Policy includes standard forms used by Aspen Specialty for all insureds having applicable coverage and provide identical or substantially similar coverage for all Class members.

28. At all times relevant hereto, Plaintiff was a named insured under the Policy. (Ex. A at p. 1).

29. At all times mentioned herein, the Policy's Declarations listed the hotel/premises located at 800 North Kinzie Avenue, Bradley, Illinois 60915 as a covered premises. (Ex. A at pp. 2, 5).

30. At all times mentioned herein, the Policy's Declarations contained a Business Income Limit of Insurance of $2,000,000.00. (Ex. A at pp. 2, 5).

31. Plaintiff has performed all of its obligations under Policy Number WKA US02699-00, including but not limited to the payment of premiums and the timely reporting of claims. Therefore, Policy Number WKA US02699-00 has been in effect since May 1, 2019 without interruption.

32. Policy Number WKA US02699-00 consists of various policy forms, including but not limited to form number "CP 00 30 10 12" - called the "Business Income (And Extra Expense) Coverage Form." (Ex. A at p. 24).

33. Under the Business Income (And Extra Expense) Coverage Form's terms, Aspen Specialty agreed as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

(Ex. A at p. 24).

34. Under the Business Income (And Extra Expense) Coverage Form's terms, "Business Income" is defined as: (a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and (b) Continuing normal operating expenses incurred, including payroll. (Ex. A at p. 24).

35. Under the Business Income (And Extra Expense) Coverage Form's terms, Aspen Specialty also agreed to provide "Extra Expense" coverage, as follows:

> **2. Extra Expense**
>
> a. Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.
>
> b. Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.
>
> We will pay Extra Expense (other than the expense to repair or replace property) to:
>
> (1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.
>
> (2) Minimize the "suspension" of business if you cannot continue "operations."
>
> We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

36. The Special Form for "Causes of Loss" defines "Covered Causes of Loss" as "direct physical loss unless the loss is excluded or limited in this policy." (Ex. A at pp. 25, 33).

37. The Policy documents do not contain any additional definition of "Covered Causes of Loss."

38. The Policy documents do not define "direct physical loss of."

39. The Business Income (And Extra Expense) Coverage Form also provided for certain "Additional Coverages," including coverage for "Civil Authority," as follows:

    **a.  Civil Authority**

    In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations. When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and Necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

    (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

    (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

    Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

    Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

    (1) Four consecutive weeks after the date of that action; or

    (2) When your Civil Authority Coverage for Business Income ends;

    whichever is later.

(Ex. A at p. 25).

40. Although business income insurance (also known as business interruption insurance) typically excludes coverage for communicable diseases and/or viruses like COVID-19, neither the Business Income (And Extra Expense) Coverage Form nor the Policy contain any such exclusion.

41. On or about March 16, 2020, and in compliance with Executive Order 2020-07, Plaintiff suspended in dining service at the hotel's lounge/bar and restaurant. Plaintiff also suspended all operations at the convention center, which resulted in the cancellation of weddings and other meetings previously scheduled at the convention center. Further, the hotel experienced several room cancellations as a result of the Executive Order.

42. As a result of the suspension and cancellations explained in Paragraph 41, <u>supra</u>, Plaintiff began suffering an ongoing loss of business income.

43. On or about April 2, 2020, Plaintiff filed a claim with Aspen Specialty related to its lost business income.

44. On or about April 28, 2020, Aspen Specialty denied coverage for the lost income Plaintiff suffered because of COVID-19 and Executive Orders 2020-07 and 2020-10. A true and correct copy of Aspen Specialty's April 28, 2020 denial letter is attached hereto as Exhibit "B."

## **Class Allegations**

45. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Plaintiff brings this action on behalf of itself and the following Classes:

> **The Nationwide Class is defined as:**
>
> All entities who have entered into standard all-risk commercial property insurance policies with Aspen Specialty, where such policies provide for business income loss and extra expense coverage and do not exclude coverage for pandemics, and who have suffered losses due to the measures put in place by civil authorities' stay-at-home or shelter-in-place orders since March 16, 2020.
>
> **The Illinois Sub-Class is defined as**:
>
> All entities who have entered into standard all-risk commercial property insurance policies with Aspen Specialty insuring property in Illinois, where such policies provide for business income loss and extra expense coverage and do not exclude coverage for pandemics, and who have suffered losses due to the measures put in place by civil authorities' stay-at-home or shelter-in-place orders since March 16, 2020.

46. Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed classes following the discovery period and before the Court determines whether class certification is appropriate.

47. The Class is so numerous that joinder of all members is impracticable. Due to the nature of the trade and commerce involved, the members of the Class are geographically dispersed throughout the State of Illinois and the United States. While only Aspen Specialty knows the exact number of Class members, Plaintiff believes there are hundreds and likely thousands of members in the Class.

48. The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in Aspen Specialty's books and records.

49. Plaintiff's claims are typical of the claims of the other members of the Class it seeks to represent because Plaintiff and all Class members purchased identical coverage from Aspen Specialty containing identical language regarding lost business income.

50. Plaintiff will fully and adequately protect the interests of all members of the Class. Plaintiff has no interests which are adverse to or in conflict with other members of the Class. Plaintiff has retained counsel competent and experienced in class action litigation, including litigation relating to insurance policies. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

51. The questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members. The questions of law and fact common to the Class include, but are not limited to:

    (a) Whether there is an actual controversy between Plaintiff and Aspen Specialty as to the rights, duties, responsibilities and obligations of the parties under the business interruption coverage provisions in the standard all-risk commercial property insurance

policies;

(b) Whether measures in response to the COVID-19 pandemic are excluded from Plaintiff's and the Class members' standard all-risk commercial property insurance policies;

(c) Whether the measures put in place by civil authorities' stay-at-home or shelter-in-place orders since March 16, 2020 caused physical loss or damage to covered commercial property; and

(d) Whether Plaintiff and the Class members suffered damages as a result of Aspen Specialty's breach of contract.

52. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable, due to the vast number of Class members who have entered into the standard all-risk commercial property insurance policies with Aspen Specialty.

53. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

54. The interest of the members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The damages suffered by the Class are uniform and/or formulaic, and the expense and burden of individual litigation might make it virtually impossible for them to redress the wrongs done to them. Plaintiff

anticipates no difficulty in the management of this action as a class action.

## COUNT I – BREACH OF CONTRACT
**(Business Income, Extra Expense and Civil Authority Coverage)**

55. Plaintiff repeats and realleges the allegations of paragraphs 1 through 54 as if fully set forth herein.

56. Plaintiff brings this count individually and on behalf on behalf of the Class.

57. Plaintiff's Policy, as well as those of the other Class members, are contracts under which Aspen Specialty were paid premiums in exchange for their promise to pay Plaintiff's and the other Class members' losses for claims covered by the Policies.

58. Plaintiff and, on information and belief, other Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Aspen Specialty, or Aspen Specialty is estopped from asserted them.

59. In the Business Income (And Extra Expense) Coverage Form, Aspen Specialty agreed to pay for the actual loss of Business Income sustained due to the necessary suspension of operations during the period of restoration caused by direct physical loss of or damage to the insured premises.

60. "Business Income" under the Policy means net income that would have been earned or incurred and continuing normal operating expenses incurred, including payroll.

61. Under the Business Income (and Extra Expense) Coverage Form, Aspen Specialty also agreed to pay for Extra Expense losses, defined as necessary expenses incurred during the period of restoration that would not have been incurred if there had been no direct physical loss or damage to the property. Extra Expenses included the amount to avoid or minimize the suspension of business and to continue operations at the described premises, and the amount to minimize the suspension of business if operations cannot be continued.

62. Under the Business Income (and Extra Expense) Coverage Form, Aspen Specialty

also agreed to provide "Civil Authority" coverage, which promises to pay "actual loss of Business Income" sustained and "necessary extra expense" caused by action of civil authority that prohibits to the premises described in the Declarations due to damage to property other than property at the described premises.

63. COVID-19 and the resultant Closure Orders, including Governor Pritzker's Executive Orders, caused direct physical loss of covered property, requiring suspension of operations at the covered properties. Losses caused by the Closure Orders, including Governor Pritzker's Executive Orders, thus triggered the Business Income provision of Plaintiff's and other Class members' policies.

64. COVID-19 and the resultant Closure Orders, including Governor Pritzker's Executive Orders, caused Plaintiff and other Class members to incur Extra Expenses at the covered properties.

65. COVID-19 and the resultant Closure Orders, including Governor Pritzker's Executive Orders, triggered the Civil Authority provision under Plaintiff's and other members of the Class's Policies.

66. Plaintiff and, upon information and belief, other Class members have complied with all applicable provisions of their Policies and/or those provisions have been waived by Aspen Specialty or Aspen Specialty is estopped from asserting them, and yet Aspen Specialty has failed to comply with their insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

67. By denying coverage for any business losses incurred by Plaintiff and other Class members as a result of the Closure Orders, including Governor Pritzker's Executive Orders, in response to the COVID-19 pandemic, Aspen Specialty has breached its coverage obligations under the Policies.

68. As a result of Aspen Specialty's breaches of the Policies, Plaintiff and other Class members have sustained substantial damages for which Aspen Specialty is liable, in an amount to be established at trial.

### COUNT II – Declaratory Judgment

69. Plaintiff repeats and realleges the allegations of paragraphs 1 through 54 as if fully set forth herein.

70. Plaintiff brings this count individually on behalf of the Class pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*

71. Plaintiff's Policy, as well as those of the other Class members, are contracts under which Aspen Specialty were paid premiums in exchange for their promise to pay Plaintiff's and the other Class members' losses for claims covered by the Policies.

72. Plaintiff and, on information and belief, other Class members have complied with all applicable provisions of the Policies and/or those provisions have been waived by Aspen Specialty, or Aspen Specialty is estopped from asserted them, yet Aspen Specialty has breached its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms and have wrongfully and illegally refused to provide coverage to which Plaintiff and Class members are entitled.

73. On information and belief, Aspen Specialty has denied claims related to COVID-19 on a uniform and class-wide basis, without individual bases or investigations, so the Court can render declaratory judgment no matter whether members of the Class have filed a claim.

74. An actual case or controversy exists regarding Plaintiff's and other Class members rights and Aspen Specialty's obligations under the Policies to reimburse Plaintiff and Class members for the full amount of lost Business Income, Extra Expense losses and Civil Authority losses incurred by Plaintiff and other Class members in connection with the suspension of their

businesses stemming from Closure Orders.

75. Pursuant to 28 U.S.C. §2201, Plaintiff and other Class members seek a declaratory judgment from this Court declaring the following:

    (a) Plaintiff and other Class members sustained a "direct physical loss of" their covered premises because of the Closure Orders;

    (b) The lost Business Income Plaintiff and other Class members sustained (and continue to sustain) is due to the necessary "suspension of [its] operations" following a "direct physical loss of" the use of their property;

    (c) Plaintiff and other Class members' Business Income losses, Extra Expense losses and Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from such Orders are insured losses under their Policies; and

    (d) Aspen Specialty is obligated to pay Plaintiff and other Class members for the full amount of Business Income losses, Extra Expense losses and Civil Authority losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from such Orders.

76. A declaratory judgment regarding Aspen Specialty's obligation to reimburse Plaintiff and other Class members for the losses incurred as a result of COVID-19 and the Closure Orders will terminate the controversy and clarify the respective rights and obligations of the parties under the terms of the Policies.

**Request for Relief**

WHEREFORE, Plaintiff demands the following relief on behalf of itself and all others similarly situated:

A. That an Order be entered certifying this action as a Plaintiff Class action under Federal Rule of Civil Procedure 23;

B. A declaration by this Court that Plaintiff and other Class members sustained a "direct physical loss of" their covered premises because of the Closure Orders;

C. A declaration by this Court that the lost Business Income Plaintiff and other Class members sustained (and continue to sustain) is due to the necessary "suspension of [its] operations" following a "direct physical loss";

D. A declaration that by this Court that Plaintiff and other Class members' Business Income losses, Extra Expense losses and Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from such Orders are insured losses under their Policies;

E. A declaration by this Court that Aspen Specialty is obligated to pay Plaintiff and other Class members for the full amount of Business Income losses, Extra Expense losses and Civil Authority losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from such Orders

F. Compensatory damages in such amount as demonstrated by the proofs at trial and that the Court deems just and proper;

G. Punitive damages as to Counts for which such damages are available under applicable law and in an amount that the Court deems just and proper;

H. Imposition of a constructive trust, an order granting recessionary and injunctive relief and other such equitable relief that the Court deems just and proper;

I. An appropriate claims resolution facility, funded by Defendant, to administer relief to the Class in this case;

J. Costs of litigation and attorneys' fees; and

K. All other appropriate relief.

Dated: July 20, 2020

Respectfully submitted,

**MAG MILE LAW LLC,**

By: /s/ Mario M. Iveljic
     Attorney for Plaintiff

Mario M. Iveljic (IL – 6280267)
**MAG MILE LAW, LLC**
535 N. Michigan Ave., Suite 200
Chicago, Illinois 60611
Phone: (708) 576-1624
Fax: (847) 346-1947
Email: mario@magmilelaw.com


**DUNCAN LAW GROUP, LLC**

By: /s/ Robert R. Duncan
     Attorney for Plaintiff

Robert R. Duncan
**DUNCAN LAW GROUP, LLC**
161 N. Clark Street, Suite 2550
Chicago, Illinois 60601
Phone: (312) 202-3283
Fax: (312) 202-3284
Email: rrd@duncanlawgroup.com